REILLY, P.J.[1]
¶1 L.R.H.-J. appeals from the involuntary termination of her parental rights (TPR) to her daughter, J.N.J.-W.[2] Birth mother was found unfit at the "grounds" stage of the TPR proceeding pursuant to WIS. STAT. § 48.415(9m) after the Racine County Human Services Department (the department) moved uncontested for summary judgment. Birth mother argues that § 48.415(9m), allowing summary judgment against a parent who has committed a "serious felony" against a child, is unconstitutional both facially and as applied to her and that her trial counsel was prejudicially ineffective for failing to challenge the summary judgment motion. As we conclude that § 48.415(9m) is constitutional and, therefore, trial counsel did not perform deficiently, we affirm.
BACKGROUND
¶2 Birth mother gave birth to her third child, Baby J, on May 12, 2015. Two days later, Baby J was removed from birth mother's home and placed into foster care. Baby J was found to be a child in need of protection or services (CHIPS) pursuant to WIS. STAT. § 48.13(3m) (2015-16), and a dispositional order was entered and subsequently extended.
¶3 Baby J's placement in out-of-home care stemmed from birth mother's actions in causing the death of her first child in July 2005. According to the record, birth mother's first child was not breathing when she was brought to the emergency room where "hospital staff noted what appeared to be a large abrasion on [first child's] left temple area. There was a grab mark on the left wrist and the child had blown retinas, internal bleeding and bruises on her back." She died from her injuries. According to autopsy findings, she "died from severe head injuries leading to bleeding in the brain and brain death." Investigation into first child's death revealed a witness who days earlier observed birth mother pick up first child "by one arm, at which time [birth mother] threw [first child] on a bed and [first child] hit a wall, then fell back on the bed." Birth mother also informed police that first child was "acting up" so she "pushed [first child] down forcibly into a bathtub and [first child] hit the back of her head."
¶4 Birth mother was charged with first-degree reckless homicide and child abuse-high probability/great harm in the death of her first child. While incarcerated on those charges, birth mother gave birth to her second child in May 2007. The baby was immediately taken into temporary physical custody and in April 2008 birth mother's parental rights to her second child were voluntarily terminated. Birth mother ultimately pled guilty in July 2007 to a reduced charge of neglecting a child causing death, and the child abuse charge was dismissed but read in. She received a fifteen-year sentence (five years' initial confinement, ten years' extended supervision).[3]
¶5 Approximately two years after Baby J's CHIPS petition was filed, in April 2017, the department filed the TPR petition. The department asserted that birth mother failed to assume parental responsibility pursuant to WIS. STAT. § 48.415(6) and that birth mother committed a felony against a child pursuant to § 48.415(9m).[4] The department moved for summary judgment at the grounds phase, arguing that based on birth mother's conviction for neglect of a child causing death, there was no material issue of fact as to grounds for termination under § 48.415(9m). Birth mother did not contest the summary judgment motion, and the circuit court granted the motion.
¶6 The case proceeded to a contested dispositional hearing, and the court concluded that termination of birth mother's parental rights was in the best interest of Baby J.[5] The circuit court addressed the factors it considered most important, foremost being birth mother's "failure to take responsibility for the death of the child in the previous incident." A representative from the department testified that "until we have that admission [regarding the death of her first daughter], it becomes impossible to identify behavior changes necessary to prevent another similar situation from occurring," which the court found compelling. The court also noted "pending charges of child abuse," which it believed "demonstrate again an inability to conform behavior regarding children."[6] It noted birth mother's refusal to take medication after a psychiatric evaluation revealed that it might be helpful. And finally, it considered birth mother's "surface-level participation" with Baby J and testimony indicating that, while birth mother attended visitation on a regular basis, "there was very little interaction between the [birth] mother and [Baby J] at the visitation." The court also considered the factors found in WIS. STAT. § 48.426(3) as they applied to Baby J. The court entered the dispositional order terminating birth mother's parental rights.
¶7 On November 9, 2018, birth mother moved the circuit court for postdisposition relief, arguing ineffective assistance of trial counsel for failing to argue against the summary judgment motion at the grounds phase and for failing to contest the facial and as applied constitutionality of WIS. STAT. § 48.415(9m).[7] After a hearing, the circuit court denied the motion. Birth mother appeals.
DISCUSSION
¶8 Birth mother argues that WIS. STAT. § 48.415(9m) is unconstitutional both on its face and as applied to her as it violates her substantive and procedural due process rights under the Fourteenth Amendment to the United States Constitution, and article I, section 1 of the Wisconsin Constitution. See Dane Cty. DHS v. P.P. , 2005 WI 32, ¶15, 279 Wis. 2d 169, 694 N.W.2d 344. Whether § 48.415(9m) violates substantive due process is a question of law that we review de novo.[8] See Monroe Cty. DHS v. Kelli B. , 2004 WI 48, ¶16, 271 Wis. 2d 51, 678 N.W.2d 831. We presume the constitutionality of a statute and resolve any doubt in favor of its constitutionality. P.P. , 279 Wis. 2d 169, ¶¶16-17. "A party challenging a statute's constitutionality bears a heavy burden to overcome the presumption of constitutionality"; the statute's unconstitutionality must be established beyond a reasonable doubt. Id. , ¶18. Our case law has established that a parent who has a substantial relationship with his or her child has a fundamental liberty interest in parenting that child.[9] Kelli B. , 271 Wis. 2d 51, ¶23. And, further, that the government has a compelling interest in protecting children from unfit parents. See WIS. STAT. § 48.01.
¶9 WISCONSIN STAT. § 48.415(9m) allows the circuit court to find a parent unfit during the grounds phase of the TPR proceeding where a parent commits a serious felony against one of his or her children. Section 48.415(9m) provides:
(a) Commission of a serious felony[10] against one of the person's children, which shall be established by proving that a child of the person whose parental rights are sought to be terminated was the victim of a serious felony and that the person whose parental rights are sought to be terminated has been convicted of that serious felony as evidenced by a final judgment of conviction.
(am) Commission of a violation of [ WIS. STAT. §] 948.051 involving any child or a violation of the law of any other state or federal law, if that violation would be a violation of [§] 948.051 involving any child if committed in this state.
A judgment of conviction establishing that the parent committed one of the enumerated felonies against the parent's biological child is sufficient evidence to establish grounds under this statute, which can be determined on summary judgment. See § 48.415(9m)(a) ; Steven V. v. Kelley H. , 2004 WI 47, ¶¶37, 44, 271 Wis. 2d 1, 678 N.W. 2d 856 (finding that due process does not mandate a jury trial at the grounds phase and noting that "[s]ome statutory grounds for unfitness," such as § 48.415(9m), "are expressly provable by official documentary evidence, such as court orders or judgments of conviction").
Facial Challenge
¶10 Birth mother argues that WIS. STAT. § 48.415(9m) is facially unconstitutional as it is "overbroad, vague and denies equal protection of the laws in an arbitrary manner"[11] by not being "limited by time, severity of felony, injuries of a child, [or] circumstances of the parent." "Vagueness is essentially a procedural due process concept which is driven by notions of fair play. Therefore, a statute is void for vagueness if it does not provide 'fair notice' of the prohibited conduct and also provide an objective standard for enforcement of violations." State v. Ruesch , 214 Wis. 2d 548, 561, 571 N.W.2d 898 (Ct. App. 1997). Due process requires "that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he [or she] may act accordingly." Elections Bd. v. Wisconsin Mfrs. & Commerce , 227 Wis. 2d 650, 676-77, 597 N.W.2d 721 (1999) (citation omitted).
¶11 We disagree that birth mother's arguments overcome the presumption of constitutionality. The statute is clear and precise. The conduct addressed by the statute is "[c]ommission of a serious felony against one of the person's children." WIS. STAT. § 48.415(9m)(a). Birth mother argues that the statute is not limited by the severity of the felony conviction, but that is incorrect. The statute defines exactly which felonies satisfy the "serious felony" requirement, leaving no room for confusion or discretion. See § 48.415(9m)(b). Additionally, all the felonies enumerated relate directly to serious crimes involving death, violence, sexual assault, or neglecting a child resulting in death of the victim.[12] See, e.g., WIS. STAT. §§ 940.01, 940.02, 940.19, 940.225, 948.02, 948.21, 48.415(9m)(b)3. Further narrowing the scope of the statute, every one of these crimes must have been committed against one of the individual's children, not simply a random victim.
¶12 Birth mother also argues that the statute is not limited in time, meaning that "someone could have finished their sentence and paid their debt to society and still be found unfit without a hearing." We agree that the unfitness phase does not directly take into account the duration between the TPR and the felony conviction or whether or not the parent has completed his or her sentence; however, the procedural protections inherent in TPR proceedings protect against the arbitrary application of WIS. STAT. § 48.415(9m).
¶13 One example is how the statute was applied in this case. As the department explains, it first filed a CHIPS petition-complete with its own procedural protections-which allowed birth mother almost two years to participate in services and demonstrate her parenting abilities and relationship with her child so that birth mother could be reunified with Baby J before the court ever considered whether birth mother was unfit under WIS. STAT. § 48.415(9m). Finding a parent unfit under § 48.415(9m) does not terminate parental rights; instead, it merely moves the process to the next phase. It was only after she failed to meet the terms of reunification that the department filed the TPR petition, and once the court found birth mother statutorily unfit, the court was then still required to find that termination was in the best interests of the child at the disposition phase. As the statute is tailored to the government's interest in protecting children from unfit parents and birth mother has failed to overcome the presumption of constitutionality beyond a reasonable doubt, we conclude that § 48.415(9m) is not facially unconstitutional.
As Applied Challenge
¶14 The statute is also valid as applied to birth mother. Birth mother's main contention is that although "[h]er conviction fits under [ WIS. STAT. ] § 48.415(9m)(b)3.," she believes that "she was not properly alerted by it and therefore it was vague as to her" and also that it is "overly broad as to her in that it was not time limited and failed to allow her mitigating circumstances to be considered at the grounds phase." First and foremost, § 48.415(9m) was codified under Wisconsin law well before birth mother's conviction for neglect of a child. See Steven V. , 271 Wis. 2d 1, ¶38. Further, birth mother has cited no case law or statute for the proposition that she was required or had a right to be told that a plea to child neglect "could affect her parental rights forever." Also, as the department argues, birth mother was given oral and written grounds for TPR during the pendency of the CHIPS case; thus, she was aware of the effect of her conviction for at least two years prior to the TPR.
¶15 Birth mother also argues that mitigating circumstances applicable to the grounds phase were not addressed as a result of the summary judgment motion. Specifically, she points to that fact that she completed a lengthy prison sentence, that the death of her first child was ten years prior to the 2017 grounds phase proceeding, that she herself was abused and neglected as a child by her mother and subsequently removed from her home, and that she had been attending visitation with her child two times a week for the last two years and that "she had tried to do the programming recommended to her." While we agree that these factors are relevant to the TPR proceeding and it goes without saying that there will be circumstances specific to each TPR case, we find that these factors may be addressed during the disposition phase where the court determines what is in the best interests of the child under the totality of the circumstances.[13] As applied to this case, all these factors were testified to at the disposition hearing, including the fact that birth mother had new criminal charges pending against her, and the court took these factors under consideration in determining that it was in Baby J's best interest to terminate birth mother's parental rights. Accordingly, we cannot conclude that WIS. STAT. § 48.415(9m) is unconstitutional as applied to birth mother beyond a reasonable doubt.
Ineffective Assistance of Counsel
¶16 Finally, birth mother argues that her trial counsel was prejudicially ineffective for not challenging the constitutionality of WIS. STAT. § 48.415(9m) at summary judgment. To demonstrate ineffective assistance of counsel, a defendant must satisfy a two-prong test to show both that counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington , 466 U.S. 668, 687 (1984). We may dispose of a claim of ineffective assistance of counsel on either prong. Id. at 697. Whether trial counsel's performance was deficient and prejudicial is a mixed question of law and fact. State v. Pitsch , 124 Wis. 2d 628, 633-34, 369 N.W.2d 711 (1985).
¶17 As we set forth above, WIS. STAT. § 48.415(9m) is constitutional both on its face and as applied to birth mother. Accordingly, we conclude that trial counsel did not perform deficiently by failing to raise the issue at the grounds phase of the TPR proceedings as counsel cannot be held deficient for failing to raise a losing argument. See State v. Wheat , 2002 WI App 153, ¶14, 256 Wis. 2d 270, 647 N.W.2d 441. We also concur with the circuit court's findings that trial counsel made a strategic decision not to challenge the summary judgment motion in order to present birth mother's defense at the disposition phase.
CONCLUSION
¶18 Birth mother failed to establish that WIS. STAT. § 48.415(9m) is unconstitutional both facially and as applied to her beyond a reasonable doubt. We conclude that § 48.415(9m) is narrowly tailored to the government's compelling interest in protecting children from unfit parents. As we find that the statute is constitutional, birth mother's trial counsel was not ineffective for failing to challenge the statutory basis at the grounds phase.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(e) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

We will refer to L.R.H.-J. as "birth mother" and J.N.J.-W. as "Baby J."

Birth mother was released from prison to extended supervision in 2011, after serving five years.

There are two phases in a TPR proceeding: a "grounds" or "unfitness" phase and a dispositional phase. See Steven V. v. Kelley H. , 2004 WI 47, ¶¶24-27, 271 Wis. 2d 1, 678 N.W.2d 856. At the grounds phase, the circuit court determines whether the parent is unfit based on one of grounds listed in Wis. Stat. § 48.415. Steven V. , 271 Wis. 2d 1, ¶¶24-25. If the parent is found unfit, the case proceeds to the dispositional phase, during which the court determines if termination is in the best interests of the child. Id. , ¶27.

Baby J's birth father was also subject to a TPR. He did not appear at the dispositional hearing, and after hearing testimony that he had not participated in any services offered during the CHIPS proceeding or the TPR proceeding, the circuit court ordered birth father's parental rights terminated.

Her supervision has since been revoked and she returned to prison based on a charge that she claims was "fabricated by a relative."

Birth mother's appellate counsel filed a no-merit report with this court. On August 29, 2018, we concluded that there was at least one arguably meritorious issue that could be pursued, and we rejected the no-merit report and dismissed the appeal without prejudice. Birth mother then moved this court for a remand to the circuit court for the purpose of raising a claim of ineffective assistance of counsel and necessary fact-finding, which we granted by order of this court on November 2, 2018.

"An individual's substantive due process rights protect against a state action that is arbitrary, wrong, or oppressive," State v. Wood , 2010 WI 17, ¶17, 323 Wis. 2d 321, 780 N.W.2d 63, and "forbids a government from exercising 'power without any reasonable justification in the service of a legitimate governmental objective,' " State v. Luedtke , 2015 WI 42, ¶74, 362 Wis. 2d 1, 863 N.W.2d 592 (citation omitted). Conversely, "the question of fairness is addressed as a matter of procedural due process.... [E]ven if a challenge that a government action deprives 'a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner.' " Wood , 323 Wis. 2d 321, ¶17.

We note that birth mother does not argue what level of scrutiny we should apply to determine the constitutionality of Wis. Stat. § 48.415(9m). As we stated, parents have a liberty interest in parenting their child when they have a substantial parental relationship with that child, but there remains a question as to whether birth mother had a substantial parental relationship with Baby J. As this issue was not addressed in the circuit court, we will not address whether birth mother maintains a fundamental liberty interest or whether it is appropriate to apply strict scrutiny or rational basis review as the statute passes under either standard.

The statute further provides the definition of a "serious felony" as follows:
1. The commission of, the aiding or abetting of, or the solicitation, conspiracy or attempt to commit, a violation of [ Wis. Stat. §] 940.01, 940.02, 940.03 or 940.05 or a violation of the law of any other state or federal law, if that violation would be a violation of [§] 940.01, 940.02, 940.03 or 940.05 if committed in this state.
2. a. The commission of a violation of [ Wis. Stat. §] 940.19(3)... a violation of [§] 940.19(2), (4) or (5), 940.225(1) or (2), 948.02(1) or (2), 948.025, 948.03(2)(a), (3)(a), or (5)(a) 1., 2., or 3., 948.05, 948.051, 948.06, 948.08, or 948.081, or a violation of [ Wis. Stat. §] 940.30(2) if [§] 940.302(2)(a)1.b. applies.
b. A violation of the law of any other state or federal law, if that violation would be a violation listed under subd. 2.a. if committed in this state.
3. The commission of a violation of [ Wis. Stat. §] 948.21 or a violation of the law of any other state or federal law, if that violation would be a violation of [§] 948.21 if committed in this state, that resulted in the death of the victim.
Wis. Stat. § 48.415(9m)(b).

We note that birth mother mentions equal protection in her brief-in-chief, but she fails to develop any argument beyond making conclusory statements. State v. Pettit , 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) ("We may decline to review issues inadequately briefed.").

Birth mother argues that some of the crimes listed in the statute include "aiding or abetting, solicitation, conspiracy or attempt to commit" and that the statute includes felony murder where "parenting skills or treatment of their child has nothing to do with their conviction." We disagree that if you are engaging in behavior that leads to a conviction for one of these crimes that result in the death of injury of your child, that those conscious choices have nothing to do with a parent's ability to protect and properly care for his or her child.

We note our supreme court's recent decision in State v. C.L.K. , 2019 WI 14, ¶16, --- Wis. 2d ----, --- N.W. 2d ----, where the court concluded "that a proceeding in which a court decides a disputed matter in favor of the State, before allowing the respondent the option of presenting his case-in-chief, adversely affects the very framework within which the trial is supposed to take place." The court's decision in C.L.K. does not appear to overrule its previous decision in Steven V. , 271 Wis. 2d 1, ¶¶37, 44, that due process does not mandate a jury trial, that summary judgment is available at the grounds phase, and that some grounds "are expressly provable by official documentary evidence, such as court orders or judgments of conviction." As such, we do not address it further.